**BANKS ENTERPRISES, INC.,**
**Plaintiff,**

**v.**

**FEDERAL ENERGY ADMINISTRATION (an agency of the United States), and United States of America, Defendants.**

**No. C74-191.**

United States District Court,
D. Wyoming.

Dec. 16, 1975.

Donald R. Winship of Winship & Kastanek, Casper, Wyo., for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Stanley D. Rose and Christopher M. Was, Attys., Dept. of Justice, Washington, D. C., and Tosh Suyematsu, Asst. U. S. Atty., Cheyenne, Wyo., for defendants.

KERR, District Judge.

The plaintiff, Banks Enterprises, Inc., is a Wyoming corporation selling drilling mud to oil drilling rig customers. It also owns a petroleum bulk station and sells diesel fuel at retail to oil drilling rig customers on a bid basis. This bid price includes transportation charges to the customer's current location. No separation of product costs and transportation cost is made. Delivery is made by the plaintiff to the well site as a regulated intrastate carrier under the Wyoming Public Service Commission Regulations.

Banks Enterprises' petroleum bulk plant business was conducted both as a reseller and a retailer. At all pertinent times, sales of No. 1–D diesel fuel and No. 2–D diesel fuels were subject to Cost of Living Council ("COLC") Phase IV price regulations and the Federal Energy Administration's Mandatory Petroleum Price Regulations. Based on information obtained from business records, the Federal Energy Administration and its predecessor, the Internal Revenue Service Stabilization Division, determined that the prices received for sales of No. 1 and No. 2 diesel fuels from September 8, 1973 through January 15, 1974, exceeded the allowable ceiling price markup in an amount varying from 0.526¢ to 13.906¢ per gallon. The amount of overcharge was determined pursuant to the formula set forth in 6 C.F.R. 150.355 and 150.359. In effect, the regulations permitted a maximum lawful ceiling price with respect to No.

2–D diesel fuel (§ 150.355) equal to the August 1, 1973 cost plus the markup the retailer charged on January 10, 1973. With respect to No. 1–D diesel fuel (§ 150.359), the maximum lawful sales price was the current inventory cost plus the January 10, 1973 markup.

These regulations were amended effective 5:00 p. m., E.S.T., September 28, 1973. The amendment fixed the maximum lawful ceiling price of No. 2–D diesel fuel at the inventory cost on September 27, 1973 plus the May 15, 1973 markup, and of No. 1–D diesel fuel at the current inventory cost plus the May 15, 1973 markup.

The regulations were amended a second time effective October 31, 1973, so that the maximum lawful selling price for both products was in effect the current inventory cost plus the May 15, 1973 markup. (Now both products' price was determined under 6 C.F.R. 150.359).

On December 31, 1973, 6 C.F.R. 150.-359 was amended to allow a maximum one cent per gallon non-product cost increase to be passed through with respect to No. 2–D diesel fuel.

At no time has the defendant considered the transportation charges as anything other than part of the product sales price. Thus both the January 10, 1973 markup over inventory cost and the alleged overcharges included transportation costs. As a result of its investigation, the Internal Revenue Service, on February 22, 1974, issued a Remedial Order directing plaintiff to roll back its prices and to refund $38,175.66 to identifiable customers who were overcharged. Plaintiff requested a modification or rescission of this order and made application for Price Exception. The Exception was denied and the Modified Remedial Order issued by the FEA did not alter plaintiff's basic liability. No appeal was taken from either decision. However, the regulations indicate that none is necessary to exhaust the administrative remedies. 6 C.F.R. 155.87.

On November 6, 1974, plaintiff applied for a stay of the Modified Remedial Order. The FEA denied plaintiff's application. The plaintiff has not yet complied with either the original or the Modified Remedial orders but filed this action seeking a declaratory judgment determining its rights and status.

On October 15, 1975, plaintiff filed a Motion for Summary Judgment and defendants filed a Cross-Motion for Summary Judgment. Both sides submitted Memorandum Briefs in lieu of scheduling a hearing.

The government brief includes pages of figures to establish how the amount of alleged overcharge was ascertained. The plaintiff does not contest the results of this calculation but contends that the method of calculation itself is unjust in that it fails to consider the fact that each delivery to a different well location would cause the bill price to be increased or decreased according to the site accessibility. There is no showing by the defendants that this factor was ever considered. Whether or not it was considered and rejected prior to issuance of the remedial order or during the hearing on plaintiff's request for a Modified Remedial Order is left unsettled. The absence of any findings by the IRS or the FEA leaves the Court unable to evaluate the findings of those agencies.

The plaintiff has made a greater effort to present evidence showing that the orders issued to it by the IRS and FEA are unjust. But here, as in the defendants' filings, key factors are missing. The plaintiff has offered no evidence which would indicate what portion of the charges in the different sales actually should be considered transportation costs. This will require evidence as to the location of each well site and could more readily be presented by witnesses in court since varied terrain as well as mileage must be considered. Without this information it is impossible to determine if the price ceilings were violated. Plaintiff seeks to be exempt from

the price ceilings due to its method of bookkeeping (which predated the controls) but if the necessary information can be obtained from other sources, an effort to do so should be made.

■ The defendants also request summary judgment due to plaintiff's failure to exhaust its administrative remedies. They fail, however, to state what further action the plaintiff was required to take in order to exhaust its remedies. A reading of 6 C.F.R. 155.87 (cited by the plaintiff) indicates that Banks Enterprises did attempt to comply with the IRS and FEA procedures.

An order will be entered overruling the motions for summary judgment.